OPINION EN BANC
STAHL, Circuit Judge.
Petitioner Sulay Jobe failed to appear at his deportation hearing and was ordered deported in absentia. More than eight months later, Jobe filed a motion to reopen asking that his deportation order be rescinded. In support of the motion, Jobe alleged that ineffective assistance of counsel had caused him to miss the deportation hearing. An immigration judge (“IJ”) denied the motion as untimely because, by statute, such motions must be filed within 180 days of the deportation order. Jobe appealed, contending that the same attorney incompetence that caused him to miss his hearing also caused him to miss the deadline for filing his motion to reopen. The Board of Immigration Appeals (“BIA”) dismissed the appeal. Jobe then sought review of the BIA’s decision in this court. On May 24, 2000, a divided panel vacated the BIA’s order and remanded for a hearing to determine whether the running of the 180-day period for filing a motion to reopen should be equitably tolled on the facts of this case. Thereafter, respondent Immigration and Naturalization Service (“INS”) petitioned for and was granted en banc review of the panel’s holding. We simultaneously withdrew the panel opinion. We now dismiss Jobe’s petition for review.
I.
In June 1994, Jobe, a native and citizen of Gambia, entered the United States as a nonimmigrant visitor for business. He was authorized to remain in the United States until July 18, 1994, but remained beyond that date without authorization from the INS. On September 9, 1994, Jobe contacted the INS and filed an application for political asylum. On February 6, 1996, the INS informed Jobe that his application had been denied and his case referred to an IJ for a hearing.
On February 14, 1996, the INS served Jobe with an order to show cause (“OSC”), *98 which charged him with remaining in the United States longer than permitted, in violation of § 241(a)(1)(B) of the Immigration and Nationality Act (“INA”), codified at 8 U.S.C. § 1251(a)(1)(B) (1994).[1] A hearing on the OSC was scheduled in Boston on May 22,1996. The OSC specifically advised Jobe that, if he failed to appear for his hearing and his deportability were established, he would be deported in absen-tia. The OSC also advised Jobe that, if were deported in absentia, he could not have the order rescinded except that he “may file a motion to reopen the hearing within 180 days after the date of the [deportation] order if [the alien is] able to show that [his] failure to appear was because of exceptional circumstances.... ”[2] In March or early April of 1996, Jobe moved to New York City to live with his friend, Sulayman Bah. Jobe does not write or speak English, and thus used Bah as an intermediary to retain attorney Earl S. David to represent him.
The crucial facts of this case, which we derive from Jobe’s own submissions during the administrative proceedings, are as follows. On April 12, 1996, Attorney David wrote to the Immigration Court in Boston, requesting a change in venue to New York because Jobe now lived there. Subsequently, Jobe, again using Bah as an intermediary, contacted Attorney David to inform him that he would be unable to attend the May 22 hearing because of a back injury. According to affidavits submitted by Bah and Jobe (and disputed by Attorney David), David informed Bah that the case already had been transferred to New York and that Jobe would be contacted when the court set a new hearing date. The case never was transferred. Neither Jobe nor David attended the May 22 hearing, and Jobe was ordered deported in absentia. In his brief, Jobe suggests that he only learned that he had been ordered deported in absentia when he received a December 4, 1996 notice from the INS denying his application to renew his employment authorization. At that time, the 180-day statutory window for seeking rescission on the basis of exceptional circumstances' — a statutory window of which Jobe had been advised in the OSC — -had closed, but only by a couple of weeks.
Nonetheless, Jobe failed to take any action until February 11, 1997, when, acting through new counsel, he moved to reopen and stay the deportation proceedings. Insofar as is here relevant, he argued that his failure to appear was the result of “exceptional circumstances” — i.e., ineffective assistance of counsel[3] — and that *99 his deportation order thus should be rescinded. See INA § 242B(c)(3)(A), codified at 8 U.S.C. § 1252b(e)(3)(A) (1994)[4] (permitting the rescission of an in absentia deportation order “only ... upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2) of this section)”).[5] On February 12, 1997, an IJ denied the motion as untimely, noting that it was brought well outside the 180-day window provided in the statute. On March 10, 1997, Jobe appealed the IJ’s decision to the BIA. He argued that the IJ erred in denying his motion to reopen because his failure to file the motion within the 180-day statutory period was caused by the same ineffective assistance of counsel that caused him to miss his deportation hearing in the first instance. On December 15, 1998, the BIA dismissed Jobe’s appeal because Jobe was “statutorily barred [by the 180-day statutory window] from rescinding the deportation order on the basis of exceptional circumstances.”
Jobe then petitioned us to review the BIA’s order. In his brief, Jobe argued that the BIA violated his due process rights by applying the 180-day statutory period in circumstances where the same ineffective assistance of counsel that caused him to miss his hearing also caused him to miss the deadline for filing his motion to reopen. A divided panel of this court granted the petition. The majority construed Jobe’s brief as setting forth an argument that the 180-day time period prescribed in INA § 242B(c)(3)(A) is subject to equitable tolling, and, after noting that the issue has split the circuits,[6] agreed with Jobe’s argument on the merits. The majority also determined that Jobe’s submissions were sufficient to warrant further inquiry, at the agency level, into whether the statute should be equitably tolled in the circumstances of this case. The dissent argued, inter alia, that the majority should not have decided whether the statute is subject to equitable tolling because, even if it were, Jobe had failed to establish possible entitlement to equitable relief. Thereafter, the INS sought and was granted rehearing en banc, and the panel opinion was withdrawn.
II.
In its petition for rehearing en banc, the INS makes a powerful argument that INA § 242B(c)(3)(A) should be regarded as mandatory and jurisdictional and thus not subject to equitable tolling — an argument that is skillfully countered not only by our dissenting brothers, but also by the Massa- *100 ehusetts Law Reform Institute, which filed a well argued amicus brief on behalf of itself and the following interested parties: the Political Asylum Immigration Representation Project; Greater Boston Legal Services; the International Institute of Boston; the Community Legal Services and Counseling Center; the Harvard Immigration and Refugee Clinic; the Boston College Immigration and Asylum Project; the National Immigration Project of the National Lawyers Guild; and the American Immigration Lawyers Association. We appreciate the importance of the issue and the effort that has been expended in framing it for us in a most helpful way. But because Jobe has not made a prima facie showing of entitlement to equitable tolling or otherwise convinced us that application of INA § 242B(c)(3)(A)’s time limit violates his due process rights on the facts of this case, we dismiss the petition without deciding whether the equitable tolling doctrine may apply to this statutory provision.
Even when it applies, equitable tolling is a “sparingly” invoked doctrine. Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). We have identified five factors that should guide courts in evaluating a claimant’s entitlement to such tolling: (1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one’s rights; (4) an absence of prejudice to a party opponent; and (5) the claimant’s reasonableness in remaining ignorant of the time limit. See Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 61 (1st Cir.1998) (deciding whether to toll the running of a statute of limitations) (citing Kale v. Combined Ins. Co., 861 F.2d 746, 752 (lst Cir.1988)). The fundamental principle is that equitable tolling “is appropriate only when the circumstances that cause a [party] to miss a filing deadline are out of his hands.” Salois v. Dime Savings Bank, 128 F.3d 20, 25 (1st Cir.1997) (citation and internal quotation marks omitted). For this reason, “[e]quitable tolling is unavailable where a party fails to exercise due diligence.” Benitez-Pons, 136 F.3d at 61.
In this case, the evidence submitted by Jobe in support of his equitable tolling argument[7] undermines his claim to have been sufficiently diligent to warrant an equitable tolling of the statute. In paragraph 4 of his August 4, 1997 affidavit, Bah largely corroborates the allegation which is at the heart of Jobe’s claim that attorney dereliction caused him to miss the May 22, 1996 deportation hearing:
Attorney David promised to transfer the case to New York. Attorney David told me that he had written for the case to be transferred from Boston to New York. I believed him and told [petitioner] to disregard the hearing date scheduled for Boston. I told [petitioner] that Immigration will inform him of his new Court date in New York.
But then, in paragraph 5 of the same affidavit, Bah states: “The next letter addressed to Sulay Jobe was a ruling from the Immigration Court that was done in Sulay’s absence. I advised Sulay of this letter and told him to see an Attorney immediately.” (Emphasis added.). Moreover, in his September 11, 1997 sworn “correction” to his August 4 affidavit, Bah makes clear two crucial facts: (1) the notice of the IJ’s in absentia deportation order was in Bah’s hands within a month of the IJ’s ruling;[8] and (2) Bah “immedi *101 ately ” told Jobe about the arrival of the notice.
Thus, even if we assume that “exceptional circumstances” caused Jobe to miss his hearing, and even if we credit the unsworn statement in Jobe’s brief which suggests that Jobe did not actually ascertain that he had been ordered deported until December 1996, we are left with Bah’s two uncontra-dicted sworn statements, put in the record by Jobe himself, which combine to establish that, in May or June of 1996, several months before the expiration of the 180-day time period set forth in INA § 242B(c)(3)(A), Jobe learned that an IJ had taken some action on his asylum application and was advised to consult an attorney immediately. Despite this knowledge and advice, Jobe took no action to protect his rights for more than half a year. In our view, this fact conclusively establishes that Jobe was insufficiently diligent in pursuing his asylum application to warrant the provision of any equitable relief that might be available under the statute. So too does this fact fatally undermine the premise of the as-applied due process argument Jobe presses in his appellate brief: that his counsel’s ineffectiveness was the cause of his failure to file a timely motion to reopen his deportation proceedings and rescind the deportation order.
III.
For the reasons stated, we do not decide whether the equitable tolling doctrine applies to INA § 242B (c)(3)(A) but rather dismiss Jobe’s petition because he is not factually entitled to equitable tolling and because application of the statute in these circumstances does not deprive him of due process.

Petition dismissed.

.On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA”), Pub.L. No. 104-208, 110 Stat. 3009, 3009-546 (1996), which redesignated former INA § 241 as § 237, transferred it to a different section of the United States Code, and otherwise brought significant changes to the country’s immigration laws. But because petitioner was in deportation proceedings before April 1, 1997 (IIRIRA’s "Title III-A effective date”) and had his final order of deportation entered more than 30 days thereafter, he is subject only to the IIRIRA's so-called "transitional rules.” See IIRIRA § 309(c)(1),(4) (as amended) ("transitional rules”). And under the transitional rules, the IIRIRA's permanent new rules do not apply unless a case meets one of the enumerated exceptions set forth in IIRIRA § 309(c)(4). All agree that none of these exceptions applies to this case. Thus, we evaluate Jobe's petition under the "old rules,” such as INA § 241(a)(1)(B), even though they have since been repealed or re-designated.

. The OSC also advised Jobe of his entitlement to file a motion to reopen an in absentia deportation order
at any time if [the alien] can show that [he] did not receive written notice of [the hearing on the OSC] and [he] had provided [his] address and telephone number (and any changes of [his] address and telephone number) as required ... and did not appear at [his] hearing through no fault of [his] own.
In the administrative proceedings, Jobe claimed that he received inadequate notice of the hearing on his OSC, but he has abandoned that claim in this court.

. Because deportation proceedings are civil, the Sixth Amendment guarantee of effective counsel in criminal proceedings is inapplica *99 ble. Nonetheless, we have recognized that "there is a due process violation if [a deportation proceeding] was so fundamentally unfair that the alien was prevented from reasonably presenting his case." Bernal-Vallejo v. INS, 195 F.3d 56, 63 (1st Cir.1999) (collecting cases). It is in this sense that the phrase "ineffective assistance of counsel" has made its way into immigration cases, and it is in this sense that we use the term in this opinion.

.Although INA § 242B(c)(3)(A), codified at 8 U.S.C. § 1252b(c)(3)(A) (1994), has been repealed, Congress replaced the provision with one that is in all respects identical except that what formerly was called "deportation” is now referred to as "removal.” See INA § 240(b)(5)(C)(i), codified at 8 U.S.C. § 1229a (b)(5)(C)®.

. Former INA § 242B(f)(2), codified at 8 U.S.C. § 1252b(f)(2), provided: "The term 'exceptional circumstances’ refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien.”

. Compare Anin v. Reno, 188 F.3d 1273, 1278 (11th Cir.1999) (holding that INA § 242B(c)(3)(A) sets forth 'a "mandatory and jurisdictional” time bar) with Lopez v. INS, 184 F.3d 1097, 1100 (9th Cir.1999) (holding that INA § 242B(c)(3)(A)’s time bar is not jurisdictional and thus subject to equitable tolling); cf. Iavorski v. INS, 232 F.3d 124 (2d Cir.2000) (holding that the equitable tolling doctrine applies to the 90-day period provided in 8 C.F.R. § 3.23(b)(l)(2000) for filing motions to reopen based on "new facts”).

. For purposes of this analysis, we shall assume arguendo that Jobe has presented a preserved and sufficiently developed argument in favor of equitably tolling the running of the 180-day time period in INA § 242B(c)(3)(A).

. In his sworn correction, Bah states: “When the notice of decision came to the New York address, on or about May — June, 1997, I received the notice of decision from the Court at 933 E. 224th Street, Bronx, N.Y. 10466.” It is clear from context, however, that Bah intended to state that the notice of decision arrived in May — June 1996.
First, both Ball's affidavit (in paragraph 6) and his sworn correction to the affidavit state that Bah told Jobe about the notice from the
*101 Immigration Court prior to Jobe’s arrest. The exact date of Jobe’s arrest is not in the record, but Jobe’s March 10, 1997 appeal to the BIA quite clearly indicates that Jobe was detained at that time. It is thus evident that Bah received the notice well before the May-June 1997 time-frame referenced in the sworn correction.
Second, throughout these proceedings, there never has been any suggestion that the notice of deportation was lost in the mail for nearly a year and arrived at a time when the BIA already had under advisement Jobe’s appeal of the denial of the motion to reopen. Indeed, there never has been a suggestion that the arrival of the notice was in any way untimely, as there surely would have been had that in fact been the case. Thus, already knowing (as we do) that (1) Bah's sworn correction is mistaken insofar as it refers to May-June 1997; and (2) notice of a ruling handed down in Boston on May 22, 1996 is likely to reach New York by mail sometime around May-June 1996, the logical inference is that Bah (who swore out the correction in September 1997) inadvertently substituted "1997” for the intended "1996.”
Third, and perhaps most importantly, Jobe bears the burden of making a prima facie showing of entitlement to equitable tolling, and therefore of filling in any gaps in the record regarding whether his is a case warranting equitable relief. On this point, we regard it as particularly telling that Jobe has failed throughout these proceedings to offer any explanation for the discrepancy between the date of the in absentia deportation order and the dates referenced in Bah’s sworn correction to his affidavit, even in the face of (1) our request that he address his factual entitlement to equitable tolling in our solicitation of supplemental briefs following the granting of the petition for rehearing en banc; and (2) the dissent from the now-withdrawn panel opinion, which argued that Bah's sworn correction obviously substituted "1997” for the intended "1996.”