**Abid AHMED, et al., Petitioners,**

v.

**Alberto GONZALEZ,\* Respondent.**

**No. 03–2455.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 17, 2004.

Decided Feb. 23, 2005.

Guy Croteau, Immigration Law Center, Chicago, IL, for Petitioners.

George P. Katsivalis, Department of Homeland Security Office of the District Counsel, Chicago, IL, for Respondent.

Before COFFEY, MANION, and ROVNER, Circuit Judges.

ORDER

Abid Ahmed, his wife, and their three children, all Muslim citizens of India, petition for review of an order of the Board of Immigration Appeals ("Board") denying their motion to reopen deportation proceedings. As relevant here the Ahmeds

\* Pursuant to Fed. R.App. P. 43(c), we have substituted Alberto Gonzalez for John Ash- croft as the named respondent.

argued to the Board that deficient performance by their former counsel merited reopening their case before an Immigration Judge ("IJ"). The Board denied the motion as untimely but also explained that the motion lacked merit because the Ahmeds had not shown that counsel's alleged deficiencies prejudiced them. We conclude that the Board acted properly in denying the Ahmeds' motion as untimely, and thus we deny their petition for review.

The Ahmeds' application for asylum arose from a land dispute. Abid Ahmed, the principal applicant, was operating an automobile repair shop in Hyderabad, the capital of the Indian state of Andhra Pradesh, when in 1991 Hindu businessman Ashok Jan told Ahmed that he now owned the land where the shop was located. Ahmed, though, refused to recognize Jan's claim or vacate the shop, and Jan responded by allegedly sending "gundas" (which, according to Ahmed, translates as "gang people") to threaten the life of Ahmed and his family if he did not surrender the land. The conflict escalated in 1992 when riots in Hyderabad and throughout India led to the destruction of many Muslim-owned businesses. Jan, taking advantage of the riots, hired "thugs" who targeted and burned Ahmed's shop. Ahmed and his family then fled the city for a farm he owned in a nearby town, but returned to Hyderabad when villagers in the town met them shouting, "Kill that Muslim." In 1993 the Ahmeds departed for the United States. Although they were granted non-immigrant visas to visit family members, their true intention was to gain entry and then remain in the United States.

In April 1994, seven weeks after their visas expired, the Ahmeds sought asylum, claiming religious and political persecution. The Immigration and Nationalization Service (now part of the Department of Homeland Security) declined to grant asylum and in June 1996 filed an Order to Show Cause in immigration court that commenced deportation proceedings. The order charged the Ahmeds with remaining in the United States beyond the time allowed by their visas. The Ahmeds responded by renewing their applications for asylum, although at their May 1998 deportation hearing the Ahmeds' counsel, Khurram Hussain, explicitly conceded that the renewed application was based on religion, and not association with a political or social group. The Ahmeds argued that their identity as Muslims in a predominantly Hindu country meant they did not receive police protection. Abid Ahmed testified that he sought police assistance both when Jan harassed him and when he and his family encountered the hostile villagers. Each time, he said, the police rejected his pleas and responded that the laws would not protect Muslims and that Muslims had no right to land in India. Ahmed added that he delivered documents to the police proving his ownership of the Hyderabad property but the police later denied the records existed. The police, said Ahmed, even tried to aid Jan by twice calling Ahmed to the police station and demanding that he sign documents transferring his land to Jan, detaining him the first time for a day and the second time for six.

The IJ credited Abid Ahmed's testimony but rejected the claim that he and his family suffered religious persecution. The IJ reasoned that the harassment the Ahmeds experienced was "strictly land based with a financial motivation" and that, even if religion was a motivating factor, the harm did not rise to the level of persecution. The IJ ordered the Ahmeds deported with the option to voluntarily depart. Attorney Hussain filed a timely notice of appeal with the Board in June 1998, which resulted in a stay of the IJ's deportation order. Hussain checked a box on the notice indicating he would file a brief

specifying the grounds for the appeal, but as far as this record shows, counsel took no further action in the case.

Nor did the Ahmeds do anything to advance their cause. Finally, after four years of inaction, the Board in July 2002 summarily dismissed the Ahmeds' appeal for failure to file a brief. The Board's action lifted the stay of deportation, permitted the Ahmeds 30 days to voluntarily depart, and otherwise ordered they be deported as provided in the IJ's order. The Board's order of dismissal never reached the Ahmeds, however, because it was sent to the office address given the Board by attorney Hussain, who—as the Ahmeds already knew—no longer received mail there. Two separate notices of the dismissal were returned to the Board undelivered.

Then in December 2002 the Ahmeds received a "bag and baggage letter." That directive to surrender for deportation finally prompted them to act. The Ahmeds, who, as far as the record shows, had not spoken to Hussain since their appeal was filed and had never looked up the address or telephone number of his new office, then used the internet to locate the information. But when they called Hussain's new office they were told repeatedly that he was unavailable, and he did not return their calls. Hussain also failed to respond to the Ahmeds' messages asking that their case file be sent to them.

In January 2003, with the assistance of new counsel, the Ahmeds filed a motion to reopen with the Board. By then six months had passed since the dismissal of their appeal, and the 90–day time limit for such motions had long expired. *See* 8 C.F.R. § 1003.2(c)(2). In an affidavit submitted with their two-page motion to reopen, the Ahmeds admitted that only once during the four years their appeal was pending—they did not say when—did they

make any effort at all to contact attorney Hussain. (At oral argument counsel contradicted the affidavit and represented that the Ahmeds made other attempts as well, but we confine our discussion to the record and focus on what the Ahmeds told the Board.) The Ahmeds telephoned Hussain at the law office where he was working, but they were told that he no longer was with the firm and that no forwarding information was available. According to their affidavit, however, the Ahmeds also were told during this call that they "were in good hands and not to worry." As relevant here, the Ahmeds in their motion to reopen faulted Hussain for failing to (1) call other family members besides Abid Ahmed to testify before the IJ and not presenting the IJ with translations of unspecified "supporting documentary evidence"; (2) file a brief in their appeal before the Board; and (3) notify them that the appeal had been dismissed.

The Board denied the Ahmeds' motion. The Board reasoned that the motion was untimely and that, even if the missed deadline were to be overlooked, the Ahmeds had not established any prejudice flowing from attorney Hussain's alleged failure to call other family members to testify or to offer translations of supporting evidence. This ruling, the Ahmeds argue, was an abuse of discretion. They contend that the Board erred because Hussain's failure to notify them about the dismissal of their appeal should have equitably tolled the 90–day period to file a motion to reopen proceedings, and because the Board failed to address their contention that Hussain rendered deficient performance by abandoning their appeal.

The threshold question before us is whether the 90–day limit for motions to reopen, *see* 8 C.F.R. § 1003.2(c)(2), is subject to equitable tolling. We have not yet addressed this question, though we have

suggested that time constraints imposed on proceedings already before the Board, like the 90–day rule challenged by the Ahmeds, are non-jurisdictional. *See Joshi v. Ashcroft*, 389 F.3d 732, 734–35 (7th Cir. 2004). If the 90–day limit is not jurisdictional, then equitable tolling might be recognized as a basis for compelling the Board to consider a late motion to reopen, and that is the position adopted by the circuits that have decided the question. *See Riley v. INS*, 310 F.3d 1253, 1257–58 (10th Cir.2002); *Iavorski v. INS*, 232 F.3d 124, 134 (2d Cir.2000); *Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir.1999).

■ The Ahmeds, however, argue equitable tolling here for the first time. They did not argue to the Board that the 90–day limit should be excused because of attorney Hussain's performance; in fact, the Ahmeds did not even acknowledge that their motion was late. The closest they came in their motion to confronting the timeliness issue is their representation that they "were never notified by Mr. Hussain of the Board's decision, and therefore were denied the opportunity to take any further action through appeal or otherwise to protect their interests." Far from putting the question of equitable tolling before the Board, this statement hardly reveals that the timing of the motion is at issue. And since administrative exhaustion is necessary before an alien may present an argument to us, we cannot address issues that were never fairly presented to the Board. *See Medhin v. Ashcroft*, 350 F.3d 685, 689 (7th Cir.2003); *Mojsilovic v. INS*, 156 F.3d 743, 748–49 (7th Cir.1998). Still, even if we generously interpret the Ahmeds' motion to reopen as including an implicit argument to the Board that the 90–day filing deadline should be tolled because of Hussain's conduct, *see Toptchev v. INS*, 295 F.3d 714, 721 (7th Cir.2002), we

do not believe they can benefit from this equitable remedy.

All of the circuits that have accepted, or shown a willingness to accept, equitable tolling of time limitations like the one at issue here uniformly agree that a petitioner seeking to avail himself of this equitable remedy must demonstrate that he missed a time limit despite exercising due diligence. *See Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir.2003); *Riley*, 310 F.3d at 1257–58; *Iavorski*, 232 F.3d at 134; *cf. Scorteanu v. INS*, 339 F.3d 407, 413–14 (6th Cir.2003) (declining to decide whether to recognize equitable tolling with respect to 180–day time limit for motion to reopen *in absentia* deportation order because of a lack of due diligence); *Jobe v. INS*, 238 F.3d 96, 100 (1st Cir.2001) (same). Due diligence is a *prima facie* requirement placed upon an alien seeking equitable tolling of a Board time limitation, *see generally Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."), and so there is no reason to weigh external causes for missing a Board deadline if the alien was not himself diligent, *see Jobe*, 238 F.3d at 100.

The Ahmeds, however, have remained silent on the question of their own diligence, even after the government raised the question in its brief. What we know from the record is that only once in *four years* did the Ahmeds try to initiate contact with attorney Hussain, and only then because Hussain had not contacted them "in some time." What the Ahmeds discovered—that Hussain had departed his former firm without so much as leaving a forwarding address—should have prompted some response on their part. But by their own account the Ahmeds never made

any immediate attempt to locate Hussain, even though when later motivated by a "bag and baggage letter" they were able to find his new telephone number on the internet. As we noted, new counsel told us at oral argument that the Ahmeds tried more than once to call Hussain at his old office, but, putting aside that this representation has no support in the record, counsel could not shed any light on when during the four-year period the Ahmeds learned that Hussain may have abandoned them and thus had reason to investigate his handling of their appeal. *See Iavorski,* 232 F.3d at 134. Had the Ahmeds taken steps to find Hussain when they first learned that he left his old firm, they would have known before the Board dismissed their appeal that Hussain had taken no action in their appeal, or at least that he was apparently intent on refusing their telephone inquiries. Moreover, once the Ahmeds were on notice that Hussain had relocated his office without telling them, they easily could have inquired of the Board about the status of their appeal and alerted the Board to send notices directly to them. We cannot see in the Ahmeds' own conduct any evidence of due diligence, and, again, they have never contended here that their actions satisfy this *prima facie* requirement. Accordingly, we have no basis to conclude that the Board was required to accept the Ahmeds' untimely motion to reopen.

■ That is enough to decide this case, but like the Board we observe that regardless, there is no merit to the Ahmeds' underlying premise that Hussain's alleged failures caused them harm. Hussain's principal shortcoming was not filing a brief in the Ahmeds' appeal before the Board, but since immigration proceedings are civil in nature, an alien has no Sixth Amendment right to effective assistance of counsel and is thus limited to arguing that

deficient performance by counsel deprived him of the due process guaranteed by the Fifth Amendment. *See Stroe v. INS,* 256 F.3d 498, 500–01 (7th Cir.2001). Such claims, however, are "virtually foreclosed," *Pop v. INS,* 279 F.3d 457, 460 (7th Cir. 2002), because aliens have no liberty or property interest in purely discretionary relief, *see Dave v. Ashcroft,* 363 F.3d 649, 653 (7th Cir.2004). Indeed, counsel's errors are relevant only if they are coupled with "egregious circumstances," *Stroe,* 256 F.3d at 501 (quoting *In re Lozada,* 1988 WL 235454, 19 I. & N. 637 (BIA 1988)), and lead to actual prejudice resulting in the alien's deportation, *see Pop,* 279 F.3d at 460; *Ambati v. Reno,* 233 F.3d 1054, 1062 (7th Cir.2000). This qualification, moreover, is not relaxed when the deficient performance is the failure to file a brief; the Board's rule at the time it dismissed the Ahmeds' appeal allowing summary dismissal for failure to file a brief, *see* 8 C.F.R. § 1003.2(d)(2)(i)(D), does not itself violate the Fifth Amendment by depriving an alien of the opportunity to be heard, *see Awe,* 324 F.3d at 513; *Stroe,* 256 F.3d at 499, and even where the failure is attributed to counsel creating a presumption of deficiency, the alien still must demonstrate actual prejudice in order to have his case reopened, *see Dakane v. United States,* 371 F.3d 771, 775 (11th Cir.2004); *Rojas–Garcia v. Ashcroft,* 339 F.3d 814, 826–27 (9th Cir.2003).

The Ahmeds, however, have failed to show that their appeal would have been successful if only Hussain had briefed it. As best we can tell, the Ahmeds argue that Hussain could have argued to the Board that his own performance at their asylum hearing was deficient because he never presented testimony from family members to corroborate Amid Ahmed's testimony or secured translations of various documents that the Ahmeds gave him for submission to the IJ. Both arguments would have

been pointless. As to the first, the IJ accepted Hussain's offer of proof that other family members would corroborate the testimony of Abid Ahmed, so it is difficult to see how the Ahmeds were harmed. More importantly, though, the IJ *credited* Abid Ahmed's account of events without even hearing corroborating testimony from other family members, so more of the same could not possibly have helped the Ahmeds' case. Their problem is not that the IJ disbelieved their story about Ashok Jan and his thugs, but instead that the IJ concluded that what happened to them did not amount to persecution. And as for the documents that the Ahmeds supposedly gave Hussain for translation, the Ahmeds never disclosed to the Board, and do not tell us, what those documents were, so the Ahmeds' complaint about Hussain's failure to present the translations to the IJ necessarily falls far short of the "concrete evidence" required to sustain a due process claim. *See Ambati,* 233 F.3d at 1061. Accordingly, there is no basis to conclude that the IJ would have acted differently and granted asylum had he heard the omitted testimony or received the unidentified documents. *See Dave,* 363 F.3d at 653–54.

What is left to support their argument for prejudice is the Ahmeds' contention in this court that, apart from failing to brief their appeal, Hussain also failed to alert them about the dismissal of their appeal and thus kept them from taking advantage of the opportunity to depart the United States voluntarily. The IJ had given the Ahmeds 30 days to depart on their own, and the Board reinstated the time limit after dismissing the appeal. Because the Ahmeds did not leave during the allotted 30 days, the rules governing voluntary departure require that they will now be unable to seek admission to the United States for a period of ten years after they return to India. *See Lopez–Chavez v. Ash-*croft, 383 F.3d 650, 651 (7th Cir.2004). Once again, however, the Ahmeds seek relief from us on a ground they never presented to the Board, and so the question is not properly before us. *See Capric v. Ashcroft,* 355 F.3d 1075, 1087–88 (7th Cir.2004); *Awad v. Ashcroft,* 328 F.3d 336, 340 (7th Cir.2003). Much like their argument for equitable tolling, the only statement in the Ahmeds' motion to reopen that is conceivably relevant to voluntary departure is their assertion that Hussain's failure to alert them about the dismissal of their appeal denied them "the opportunity to take any further action through appeal or otherwise to protect their interests." Their prayer for relief, however, makes no mention of voluntary departure. Because the Board may have reinstated the period of voluntary departure in its discretion, *see Lopez–Chavez,* 383 F.3d at 651; *Botezatu v. INS,* 195 F.3d 311, 314 (7th Cir.1999), the Ahmeds were obligated to present the issue to the Board in order to exhaust their administrative remedies. *See Toptchev,* 295 F.3d at 721.

Accordingly, the petition for review is DENIED.