Stanislav IAVORSKI, Petitioner,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Docket No. 00–4086.

United States Court of Appeals, Second Circuit.

Argued: Oct. 3, 2000.

Decided: Nov. 7, 2000.

Matthew L. Guadagno, Kerry William Bretz and Jules Coven, Bretz & Coven, LLP, New York, NY, for Petitioner.

Heidi A. Wendel, Diogenes P. Kekatos, and Gideon Schor, Assistant United States Attorneys, New York, NY, of counsel, for Respondent.

Before: McLAUGHLIN, CALABRESI, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Some two years after his deportation hearing, petitioner Stanislav Iavorski discovered that his attorney had not appealed the Immigration Judge's ("IJ") denial of his applications for political asylum and withholding of deportation as that attorney allegedly had promised to do. Iavorski now attempts to reopen his deportation proceedings after missing the deadlines both to file his appeal and, later, to reopen his proceedings. This case presents the issue of whether the filing deadline for motions to reopen deportation proceedings may be equitably tolled when ineffective assistance of counsel has both violated an alien's constitutional right to due process of law by eliminating the right to appeal, and has caused the alien to miss the filing deadline for a motion to reopen that normally could serve as the vehicle to cure that due process violation.[1]

---

1. Iavorski was placed in deportation proceedings under former section 242 of the Immigration and Nationality Act (previously codified at 8 U.S.C. § 1252 (1994)), and, therefore, the term "deportation" is used throughout. Currently, what were formerly

Because there is no evidence that Congress intended to enact a jurisdictional bar to untimely motions to reopen, we hold that the filing deadline for motions to reopen may be equitably tolled. Although equitable tolling is available, Iavorski's failure to exhibit due diligence in pursuing his claim precludes the equitable tolling of the filing deadline in this case as a matter of law. We, therefore, affirm the BIA's denial of Iavorski's motions to reopen.

## BACKGROUND

Iavorski is a Russian citizen who entered the United States on March 20, 1995 on a tourist visa. He failed to leave when his visa expired six months later and instead applied to the Immigration and Naturalization Service ("INS") for political asylum and withholding of deportation. The INS placed him in deportation proceedings for having overstayed his tourist visa. At his deportation hearing on March 7, 1996, the IJ denied his applications for political asylum and withholding of deportation, but granted him the privilege of "voluntary departure," allowing him one year to leave the United States voluntarily in lieu of actual deportation. Iavorski was given notice that if he remained in the United States beyond one year for reasons "other than because of exceptional circumstances beyond [his] control," he would become "ineligible for certain forms of relief" including his "adjustment of status" to that of a permanent resident.

At the conclusion of his deportation hearing, Iavorski's attorney reserved the right to appeal, and the IJ ordered that a written notice of appeal be filed by March 18, 1996. Although Iavorski claims that his attorney promised to file his appeal, the attorney failed to do so. Iavorski did not leave the United States within a year, rendering him deportable, even though the INS apparently never actually attempted to deport him.

known as deportation proceedings are referred to as "removal" proceedings. *See* 8

Iavorski later applied for the annual Diversity Visa Program and, on April 6, 1998, the Department of State notified him that he had been selected at random to begin the process of becoming a permanent resident. Soon thereafter, on June 16, 1998, the INS received a Freedom of Information Act request from Iavorski seeking information on the status of his deportation case. The INS informed him that no appeal had ever been filed. On July 28, 1998, Iavorski, having retained a new attorney, moved the IJ to reopen his case, stating that his prior counsel had "[i]nform[ed him] that the Notice of Appeal has been filed," and that "his case [was] proceeding properly."

On September 15, 1998, the IJ denied Iavorski's motion to reopen, finding, *inter alia,* that the motion was filed well beyond the 90 day deadline established under 8 C.F.R. § 3.23(b)(1), and that any reopening would be fruitless since Iavorski was barred from adjustment to permanent resident status because he had not voluntarily left the United States as he had promised.

Iavorski appealed to the Board of Immigration Appeals ("BIA") from the IJ's denial of his motion to reopen. With his appeal, he submitted an affidavit recounting that, after his deportation hearing, his former attorney had

> informed me that he will appeal the decision and it will cost me $1,000. I agreed and had called him on 3/10/96 and left a massage [sic], asking him to call me back and arrange a meeting. After 3/15/96, I had tried to call him again but his office had moved. I tried to get in contact with him but was not successful. Throughout this time, I was sure that he had filed an appeal in my case.

While the BIA was still considering Iavorski's appeal from the denial of his motion to reopen, Iavorski married a United

U.S.C. § 1229a (Supp. IV 1998).

States citizen. His wife petitioned the INS to grant Iavorski permanent resident status and the INS approved the first stage of the petition. Iavorski now faced the same problem with his wife's petition for his residency as he did with his "visa lottery" approval: he was barred from adjusting his status to that of a permanent resident because the IJ still had jurisdiction over his case, had found him deportable, and would not reopen his deportation proceedings. At this point, Iavorski's new attorney sent a second motion directly to the BIA asking that it "reconsider" Iavorski's case. The BIA took this motion to be a request to reopen and remand the case to the IJ.

In dismissing Iavorski's appeal and denying his motions as untimely, the BIA rejected his contention that his "proceedings should be reopened based upon his assertion that he was the victim of ineffective assistance of counsel." The BIA explained that the only exception to the filing deadline for motions to reopen "exists for motions to apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or to which deportation has been ordered." *See* 8 C.F.R. § 3.23(b)(4)(i). Because this exception was inapplicable in Iavorski's case, the BIA dismissed the appeal. The BIA likewise found Iavorski's second motion to be time-barred. *See* 8 C.F.R. § 3.23(b)(4)(i). Iavorski now petitions this Court to review the BIA's decision.[2]

## DISCUSSION

### A. *Standard of Review*

■ We review the BIA's conclusions of law *de novo*. *See Mardones v. McEl-*

roy, 197 F.3d 619, 624 (2d Cir.1999). When the BIA has applied the correct law, its decision to deny a motion to reopen deportation proceedings is reviewed to determine "whether the decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Fuentes–Argueta v. INS*, 101 F.3d 867, 870 (2d Cir.1996) (internal quotation marks omitted).

### B. *Ineffective Assistance of Counsel in Immigration Proceedings*

■ In a deportation hearing, "the liberty of an individual is at stake" even though it "is not technically a criminal proceeding." *See Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). For this reason, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 307, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101, 23 S.Ct. 611, 47 L.Ed. 721 (1903)).

■ During deportation proceedings, aliens have a statutory right to be represented by counsel at their own expense. 8 U.S.C. § 1362 (1994). This right is "an integral part of the procedural due process to which the alien is entitled." *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir.1993) (internal quotation marks omitted). Ineffective assistance of counsel in moving to reopen or reconsider a deportation case occurs when "counsel's performance impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." *Rabiu v. INS*, 41 F.3d 879, 882 (2d Cir.1994) (internal quotation marks omitted). Such a depri-

---

**2.** Iavorski submitted his petition for review under the former 8 U.S.C. § 1105a (1994) (repealed 1996), as modified by certain "transitional changes in judicial review," that govern judicial review of orders, like Iavorski's, that were issued on or after October 31, 1996. *See* Omnibus Consolidated Appropriates Act of 1997, Pub.L. No. 104–208, div. C, tit. III–A, § 309(c)(1)(B) & (4), 110 Stat. 3009–546, 3009–625 to –626 (1996); *Henderson v. INS*, 157 F.3d 106, 117 (2d Cir.1998) (finding transitional provisions "control deportation proceedings started prior to April 1, 1997, in which the deportation order became administratively final after October 30, 1996"), *cert. denied sub nom. Reno v. Navas*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999).

vation of fundamental fairness is established when "(1) '... competent counsel would have acted otherwise,' and (2) '[the alien] was prejudiced by [ ] counsel's performance.' " *Rabiu*, 41 F.3d at 882 (quoting *Esposito v. INS*, 987 F.2d 108, 111 (2d Cir.1993) (*per curiam* )).[3]

If these conditions are met, the vehicle commonly used to redress claims of ineffective assistance of counsel in deportation proceedings has been an administrative motion to reopen proceedings. *See, e.g. Rabiu*, 41 F.3d 879 (motion to reopen to permit filing of waiver of deportability based on claim of ineffective assistance of counsel); *Esposito*, 987 F.2d 108 (motion to reopen to permit filing of appeal based on claim of ineffective assistance of counsel); *Castillo–Perez v. INS*, 212 F.3d 518 (9 th Cir.2000) (motion to reopen to permit filing of applications for asylum and withholding of deportation based on claim of ineffective assistance of counsel). Claims of ineffective assistance of counsel satisfy the general requirement that motions to reopen present "new facts" that are "material and [were] not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.23(b)(3) (2000).

In 1990, Congress amended the Immigration and Nationality Act ("INA") to provide that the Attorney General issue regulations establishing, for the first time, a filing deadline for motions to reopen. In 1996, the Department of Justice issued these regulations which imposed a 90 day filing deadline and limited an alien to only one such motion. *See* 61 Fed.Reg. 18,900, 18,905 (1996); 8 C.F.R. § 3.23(b)(1) (2000). The question presented is whether equitable tolling applies to this limitations period and, if it does, whether Iavorski's claim of ineffective assistance of counsel is sufficient to justify tolling the filing deadline in his case.

## C. The Applicability of Equitable Tolling to the Limitations on Motions to Reopen

A statute of limitations may be tolled as necessary to avoid inequitable circumstances. *See Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir.1990). Equitable tolling applies "as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996) (internal quotation marks omitted).

Not all time limitations are subject to equitable tolling. If Congress enacts a jurisdictional bar to untimely claims, equitable tolling will not apply. *See Zipes v. Trans World Airlines, Inc.; Indep. Fed'n of Flight Attendants*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). If the time limit is contained in an ordinary statute of limitations, however, it is assumed that it is subject to equitable tolling. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). "The basic question to be answered in determining whether ... a statute of limitations is to be tolled, is one of legislative intent." *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 426, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (internal quotation marks omitted).

Because Congress ordinarily does not explicitly state whether a limitations period is "jurisdictional," the nature of a limitations period is a matter of statutory construction. *See United States v. Brockamp*, 519 U.S. 347, 350–54, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). This inquiry begins by asking, "Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply?" *Id.* at 350, 117 S.Ct. 849. Here, as in other

---

**3.** Under the similar standard for ineffective assistance of counsel in criminal proceedings, this Court has held that proof that counsel was instructed to file an appeal, counsel agreed to do so, and that the appeal was not filed would be sufficient to establish ineffective assistance of counsel. *See Restrepo v. Kelly*, 178 F.3d 634, 640–41 (2d Cir.1999).

situations, the silence of Congress may express a clear legislative intent. *Cf. Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (noting the "traditional presumption" that statutes will not be held to have retroactive effect "absent clear congressional intent favoring such a result").

In *Brockamp*, for example, the Supreme Court found that a tax statute setting forth a limitation "in unusually emphatic form," expressly stating that time-barred actions "shall be considered erroneous," did not permit equitable tolling. *Id.* at 350–51, 117 S.Ct. 849. The Court noted that the statute's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate ... that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." *Id.* at 352, 117 S.Ct. 849. *See also United States v. Robinson*, 361 U.S. 220, 224, 229, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960) (finding former federal rules of criminal procedure governing appeals were "mandatory and jurisdictional" when, in addition to imposing time limits, the rules stated that "the court may not

enlarge ... the period for taking an appeal") (internal quotation marks omitted).

■ Thus, to determine whether the limitations imposed on motions to reopen in deportation proceedings are jurisdictional and therefore not subject to equitable tolling, we examine the text, structure, legislative history, and purpose of Congress's 1990 amendment to the INA.[4] There we find no indication, either explicit or implicit, that Congress intended that this limitations period not be equitably tolled. Our conclusion is supported by the Department of Justice's own interpretation of its rule making mandate from Congress, and the BIA's view of the rules that were promulgated. In the only other case to rule on this issue, the Ninth Circuit arrived at the same result. *Varela v. INS*, 204 F.3d 1237 (9 th Cir.2000) (permitting tolling of filing deadline for motions to reopen after legal assistant incorrectly assured alien he did not have to leave the United States before nine-month voluntary departure deadline).[5]

## 1. The Availability of Motions to Reopen Under Prior Law

Before the promulgation of the 1996 regulations, an alien in deportation proceed-

**4.** We note that immigration law in general possesses no special status where equitable tolling is concerned. *See, e.g. Balogun v. INS*, 9 F.3d 347, 350 (5 th Cir.1993) (tolling the six month limitations period under former 8 U.S.C. § 1252(c)-(d) for the INS to release a deportable alien when the alien's own conduct had prevented the INS from effectuating his deportation). Indeed, the more far-reaching equitable remedy of granting relief *nunc pro tunc* in certain exceptional cases has long been available under immigration law. *See, e.g. Batanic*, 12 F.3d at 667–68 (permitting submission of otherwise barred application for asylum); *In re Rapacon*, 14 I. & N. Dec. 375 (1973) (permitting reapplication for admission to the United States after deportation); *In re S–N–*, 6 I. & N. Dec. 73 (1954) (permitting reapplication for admission to the United States and waiver of an otherwise applicable ground of inadmissibility).

**5.** The Ninth Circuit has also tolled a similar statutory deadline for motions to reopen proceedings after an *in absentia* deportation or-

der when ineffective assistance of counsel resulted in the untimely filing of the motion. *Lopez v. INS*, 184 F.3d 1097 (9 th Cir.1999). The court found that the doctrine of equitable tolling of this statute of limitations was "particularly applicable" for a motion based on a claim of ineffective assistance of counsel in which a notary, posing as a lawyer, had, over the space of ten months, given the alien inaccurate information concerning the immigration benefits available to him and counseled him that he did not need to attend his deportation hearing. *Id.* at 1100. Although two other circuit courts addressing this issue have failed to equitably toll the statute of limitations for reopening proceedings after an *in absentia* deportation order, they have done so without explanation. *See Anin v. Reno*, 188 F.3d 1273, 1278 (11 th Cir.1999) (terming the statutory limitation "jurisdictional" without further discussion); *Kamara v. INS*, 149 F.3d 904, 906 (8 th Cir.1998) (finding that a motion to reopen was time-barred without discussing equitable tolling).

ings could submit an unlimited number of motions to reopen or reconsider at any time after a decision by an IJ or the BIA. *See* 8 C.F.R. § 3.2 (1995). In practice, this generous policy permitted an alien who had clearly disobeyed a deportation or voluntary departure order of the Immigration Court thereafter to remain in the United States illegally, and later to reopen proceedings to take advantage of some form of relief for which the alien had not previously been eligible. *See, e.g.* Stephen H. Legomsky, *Immigration Law and Policy* 528 (1992) (stating that motions to reopen had been viewed by the INS and BIA as "procedural devices calculated primarily to buy aliens additional time in the United States"); Richard D. Steel, *Steel on Immigration Law* § 14:57 at 468 (1985) (noting the prior availability of motions to reopen after "the entry of an initial or subsequent order of deportation ... involv[ing] a request for relief that was not previously relevant or available").

### 2. *The 1990 Amendment to the INA and the 1996 Regulations*

In 1990, in amending the INA, Congress instructed the Attorney General to "issue regulations with respect to ... the period of time in which motions to reopen and to reconsider may be offered in deportation proceedings, which regulations [shall] include a limitation on the number of such motions that may be filed and a maximum time period for the filing of such motions." Immigration Act of 1990, Pub.L. No. 101–649, § 545(d), 104 Stat. 4978, 5066 (1990). This change appeared to be aimed at eliminating the prior practice under which an alien could ignore a deportation or voluntary departure order, and years later, attempt to reopen the proceedings without any adverse consequences. *Stone v. INS,* 514 U.S. 386, 400, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (noting that the Immigration Act of 1990 "took ... steps to reduce [the] abuses of successive and frivolous administrative appeals and motions").

The legislative history of this provision indicates, however, that while Congress sought to impose general limits on motions to reopen, these limits were not intended to be inflexible. In explaining these new limitations, the House Conference Committee directed that, "[t]he Attorney General ... shall consider exceptions in the interest of justice." H.R. Conf. Rep. No. 101–955, at 133 (1990). The Committee explicitly mentioned one such exception, for "asylum claims which arise due to a change in circumstances in the country of the alien's nationality after the initiation of the deportation proceedings." *Id.*

The Department of Justice responded to this congressional mandate by issuing rules that, while clearly establishing that only one motion to reopen would be permitted and that it must be filed within 90 days, also offered mechanisms whereby otherwise untimely motions could still be considered when the circumstances so required. Under the new regulations, the time and numerical limits for motions to reopen do "not apply to a motion to reopen agreed upon by the parties [i.e., the INS and the alien] and jointly filed." 8 C.F.R. § 3.23(b)(4)(iv) (2000). Moreover, an IJ or the BIA are permitted to reopen a proceeding, upon their own motions, at any time. *See* 8 C.F.R. § 3.23(b)(1) (2000) ("An Immigration Judge may upon his or her own motion at any time ... reopen ... any case in which he or she has made a decision...."); 8 C.F.R. § 3.2(a) (2000) ("The [BIA] may at any time reopen ... on its own motion any case in which it has rendered a decision."). In explaining the exercise of this authority, the BIA has stated that, "[t]he regulations governing motions ... give the Board clear authority to reopen and remand cases without regard to other regulatory provisions.... It would therefore appear that this Board has the ability to reopen or remand proceedings when appropriate, such as for good cause, fairness, or reasons of administrative economy, and that technical deficiencies alone would not preclude such ac-

tion." *In re Yewondwosen,* Interim Dec. 3327 (BIA Sept. 9, 1997) (en banc).

These exceptions to the time and numerical limitations on motions to reopen imposed by the new rule appear to respond precisely to Congress' desire to provide for certain cases, "in the interest of justice," H.R. Conf. Rep. No. 101–955, at 133 (1990), that would otherwise be excluded by such limits. The Department of Justice highlighted the availability of such exceptions by stating, in response to criticism of the unbending nature of the new rule, that

> [t]he Department does not agree with commenters' suggestions that a "good cause exception" would be an appropriate procedural mechanism for addressing exceptional cases that fall beyond this rule's time and number limitations. Instead, section 3.2(a) of the rule provides a mechanism that allows the Board to reopen or reconsider sua sponte and provides the procedural vehicle for the consideration of cases with exceptional circumstances.

61 Fed.Reg. 18,900, 18,902 (1996). This kind of accommodation for exceptional cases is irreconcilable, however, with the strict application that would be required of a jurisdictional limitation. *See, e.g. Endicott Johnson Corp. v. Liberty Mut. Ins. Co.,* 116 F.3d 53, 55–56 (2d Cir.1997) (dismissing appeal of summary judgment as untimely despite the consent of the parties and the approval of the district court to extend the filing deadline when the time limitation was "mandatory and jurisdictional").

The authority of an IJ or the BIA to accommodate special cases has survived a subsequent statutory codification of the limits on motions to reopen that, on its face, admits to no such exceptions, further demonstrating that the Department of Justice, in its application of these limits, does not consider them to be jurisdictional. A few months after the Department of Justice promulgated the final rule limiting motions to reopen, Congress established new "removal" proceeding to replace the former "deportation" or "exclusion" proceedings, and in so doing, provided in the same statute limits on the reopening of proceedings. *Compare* 61 Fed.Reg. 18,900 (promulgating administrative rule on April 29, 1996) *with* Omnibus Consolidated Appropriations Act of 1997, Pub.L. No. 104–208, div. C, tit. III, § 304(a)(3), 100 Stat. 3009–593 (enacting statutory rules on Sept. 30, 1996) (codified at 8 U.S.C. § 1229a(c)(6)(C)). The statutory provision follows the administrative rule in·limiting an alien to "one motion to reopen proceedings," that "shall be filed within 90 days of the date of the entry of a final administrative order." 8 U.S.C. § 1229a(c)(6)(A), (C)(i). The administrative regulations continue to provide, nevertheless, for *sua sponte* reopening by an IJ or the BIA, or reopening by agreement of the parities at any time, despite the fact that no such exceptions are found in the more recent statutory provisions. *See* 8 C.F.R. § 3.23(b)(1), (b)(4)(iv); 8 C.F.R. § 3.2(a) (2000). Whether in the form of specific limits, or the authority for the Department of Justice to impose such limits, the flexibility with which IJs and the BIA have applied these congressional restrictions on motions to reopen confirms that they are not jurisdictional.

In sum, nothing in the 1990 statute that directed the Department of Justice to limit the timing and number of motions to reopen convinces us that these limitations were intended to be jurisdictional and therefore not subject to equitable tolling.

### 3. *Deference to the Agency's Interpretation of the Statute*

The government argues that because Congress has delegated to the Department of Justice the authority to administer the statute in question that we must defer to the BIA's policy of not applying equitable tolling in the case of ineffective assistance of counsel. We disagree.

In deciding whether to defer to an agency's interpretation of a statute, we

must first consider "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If it has, "that is the end of the matter." *Id.* Judging whether Congress has spoken is a matter of statutory construction over which "[t]he judiciary is the final authority ... and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n. 9. Courts may employ the "traditional tools of statutory construction" in determining legislative intent for purposes of this inquiry. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *see also Chevron*, 467 U.S. at 845, 104 S.Ct. 2778 (calling for the examination of "the statute or its legislative history") (internal quotation marks omitted).

Because the issue of whether a limitations period creates a jurisdictional bar to untimely claims is itself a question purely of statutory construction, it fits squarely within the initial step in the *Chevron* analysis. When, as here, we are called upon to engage only in an exercise of statutory interpretation, we avoid the danger of venturing into areas of special agency expertise, concerning which courts owe special deference under the *Chevron* doctrine. *See Bamidele v. INS*, 99 F.3d 557, 561 (3d Cir.1996) ("A statute of limitations is not a matter within the particular expertise of the INS. Rather, we consider this a clearly legal issue that courts are better equipped to handle.") (internal quotation marks and citations omitted); *see also Goncalves v. Reno*, 144 F.3d 110, 127 (1st Cir.1998) (finding that the validity of the BIA's retroactive application of an immigration statute "may be viewed as a pure question of statutory construction for the courts to decide, a question that is quite different from the question of interpretation that arises in each case in which the agency is required to apply [statutory] standards to a particular set of facts which involves the

agency's particular expertise") (internal quotation marks and citations omitted).

As we have already noted, the text of the 1990 statute, its legislative history and purpose, and a subsequent legislative enactment all demonstrate that the general limits Congress imposed on motions to reopen were not intended to bar the accommodation of exceptional cases in which a motion would otherwise be untimely.

■ Even if we were not satisfied that the intent of Congress was clear, we would nonetheless reject the BIA's interpretation of the regulations. When Congress has not directly addressed an issue, our review is not merely for "minimum rationality" but requires that the administrative agency "articulate a logical basis" for its judgment. *Detsel v. Sullivan*, 895 F.2d 58, 63 (2d Cir.1990) (internal quotation marks omitted). In this case, the agencies charged with administrating our immigration laws have offered no evidence whatsoever that Congress intended the limits on motions to reopen to establish a jurisdictional bar. The government's own interpretation of the statute, both in its administrative rule making and in its discussion of the rule in other BIA case law, itself supports our conclusion that exceptional cases are not subject to the general limitations imposed on motions to reopen, and therefore such limitations are not jurisdictional.

Failing to present any evidence to support its claim, the government argues that because Congress delegated to the agency the task of setting the exact duration of congressionally mandated filing deadlines, Congress necessarily conferred upon the agency the additional task of determining whether such deadlines were jurisdictional. *See* Respondent's brief at 24. We reject this contention. The power to establish jurisdictional bars resides with Congress and every indication points to the fact that Congress did not intend to create a jurisdictional bar for untimely motions to reopen.

### D. *The Due Diligence Requirement*

██ This Court has held that "[e]quitable tolling requires a party to pass with reasonable diligence though the period it seeks to have tolled." *Johnson v. Nyack Hosp.*, 86 F.3d at 12; *see also Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir.1989) ("It is a common maxim that equity is not intended for those who sleep on their rights."). In a situation where fraud or concealment of the existence of a claim prevents an individual from timely filing, equitable tolling of a statute of limitations is permitted until the fraud or concealment is, or should have been, discovered by a reasonable person in the situation. *See Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir.1993); *Bowers*, 901 F.2d at 264 (2d Cir.1990).

### E. *The Application of the Due Diligence Requirement*

██ In this case, Iavorski failed as a matter of law to exercise the requisite due diligence during the period of nearly two years he seeks to toll. Iavorski claims that in the first few days after his March 7, 1996 deportation hearing and his attorney's promise to appeal, Iavorski made several attempts to reach his attorney. Iavorski states that he was unsuccessful because his attorney moved his office, apparently without leaving a forwarding address or telephone number.

According to the record, after these few initial calls, Iavorski made no further attempt to investigate the status of his appeal until May 15, 1998, when the INS received his Freedom of Information Act request. Even at this late date, his request did not appear to have been motivated by an interest in pursuing his rights under his original applications for asylum or withholding of deportation but rather out of interest in the Diversity Visa Program.

Given that Iavorski had been unsuccessful in reaching his attorney directly after his deportation hearing, learned that his attorney had moved and could not be reached, that Iavorski never paid the $1,000 fee his attorney originally requested for filing the appeal, and at some point learned that his attorney no longer practiced law, it is reasonable to assume that Iavorski should have known that he had been a victim of ineffective assistance of counsel well before the end of the two-year period he seeks to toll. For this reason, Iavorski cannot demonstrate, as a matter of law, that he demonstrated the diligence required to toll his filing deadline for motions to reopen for nearly two years. Iavorski's second motion to the BIA fails for substantially the same reason.

██ Although the BIA did not address the issue of equitable tolling and therefore did not make a finding regarding due diligence, we may affirm the BIA's denial of the motion to reopen on grounds not stated in the decision if we are certain, given the facts, as to how the BIA would have resolved this issue. *See Osmani v. INS*, 14 F.3d 13, 15 (7th Cir.1994); *Time, Inc. v. United States Postal Serv.*, 667 F.2d 329, 333–34 (2d Cir.1981). Even accepting all of Iavorski's factual allegations as true concerning his claim of ineffective assistance of counsel, as a matter of law, he could not avail himself of equitable tolling because he failed to exhibit the requisite due diligence.

## CONCLUSION

██ A motion to reopen immigration court proceedings traditionally has offered a vehicle to remedy cases in which ineffective assistance of counsel has resulted in the violation of an alien's constitutional right to due process. This is no less true today, even after Congress mandated limitations on the timing and number of such motions. Because there is no evidence that Congress intended to enact a jurisdictional bar to untimely motions to reopen, the limitations period for such motions may be equitably tolled to accommodate claims of ineffective assistance of counsel.

For an untimely claim to receive the benefit of equitable tolling, however, an alien must demonstrate not only that the alien's constitutional right to due process has been violated by the conduct of counsel, but that the alien has exercised due diligence in pursuing the case during the period the alien seeks to toll. Because Iavorski failed to demonstrate such diligence, equitable tolling does not apply as a matter of law.

Accordingly, the order of the BIA denying Iavorski's motions is AFFIRMED.