**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 14, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEREMY E. RILEY,

     Petitioner - Appellant,

v.

ALBERTO R. GONZALES, Attorney
General,[*]

     Respondent - Appellee.

No. 04-9524
(Immigration &
Naturalization Service)
(No. A-27-591-887)

**ORDER AND JUDGMENT**[**]

Before **HENRY**, Circuit Judge, **HOLLOWAY,** Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

Jeremy Riley (formerly Libarid Ghazarian) appeals the Board of

Immigration's (the Board's) denial of his motion to reopen deportation

proceedings as untimely. The Board declined to apply equitable tolling,

---

[*] On February 4, 2005, Alberto R. Gonzales became the United States Attorney
General. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure,
Mr. Gonzales is substituted for John Ashcroft as the Respondent in this action.

[**] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

concluding Riley failed to exercise due diligence in the pursuit of his claim.

Exercising jurisdiction pursuant to § 309(c)(1) and (4) of the Illegal Immigration

Reform and Immigrant Responsibility Act (IIRIRA),[1] we affirm.

Background

An Egyptian-born Lebanese national, Jeremy Riley arrived in the United

States in 1985 on a one-year tourist visa authorizing him to remain in the United

States until January 11, 1986.  In 1990, Riley's retained attorney filed an

application for asylum.  After a hearing on the matter in January 1991, the

immigration judge denied asylum and granted voluntary departure.  In February

1991, Riley's attorney filed a Notice of Appeal to the Board which contained a

four paragraph statement of the reasons for appeal and a reservation of the right

to file a separate brief "upon receipt of the transcribed wording of the

Immigration Judge's oral decision." (R. at 230.)

No brief was filed, but on April 15, 1991, the Board ordered the

proceedings continued indefinitely to allow Riley to apply for Temporary

---

[1] Riley submitted his petition for review under the former 8 U.S.C. § 1105a (1994) (repealed 1996), as modified transitional rules that govern judicial review of orders, like Riley's, that were issued on or after October 31, 1996.  *See* Omnibus Consolidated Appropriates Act of 1997, Pub.L. No. 104-208, div. C, tit. III-A, § 309(c)(1)(B) & (4), 110 Stat. 3009-546, 3009-625 to -626 (1996); *Henderson v. INS,* 157 F.3d 106, 117 (2d Cir. 1998) (finding transitional provisions "control deportation proceedings started prior to April 1, 1997, in which the deportation order became administratively final after October 30, 1996."), *cert. denied sub nom., Reno v. Navas,* 526 U.S. 1004 (1999).

Protected Status as a Lebanese national. In 1994, the INS[2] moved to reinstate

Riley's case because protected status for Lebanese nationals terminated in 1993.

On November 27, 1998, the Board reinstated Riley's case, affirmed the decision

of the immigration judge, and allowed Riley to voluntarily depart the United

States in thirty days or be deported. The Board's decision was sent to Riley's

attorney, but apparently he forwarded the decision to Riley at the wrong address.

In August 1999, in response to his annual application for work authorization,

Riley received a notice to report for deportation on September 9, 1999. Riley

contacted his attorney who warned him that he must report to the immigration

officer or he would be arrested. On September 2, 1999, his attorney reiterated the

warning in a letter. Riley did not report as instructed and on September 22, 1999,

he was arrested and transferred to the Wackenhutt Corrections Center, where he

remained for over two years. *Riley v. INS*, 310 F.3d 1253, 1255 (10th Cir. 2002).

Meanwhile, in 1992, Riley became eligible to apply for suspension of

deportation, a form of relief for individuals who 1) maintained continuous

physical presence in the United States for seven years, 2) showed good moral

character during that period, and 3) would experience extreme hardship if

---

[2] "The INS ceased to exist on March 1, 2003, and its functions were transferred to the U.S. Citizenship and Immigration Services ('USCIS') within the newly formed Department of Homeland Security [(DHS)]." *Batalova v. Ashcroft,* 355 F.3d 1246, 1248 n.1 (10th Cir. 2004). Because the majority of the events in this case occurred prior to 2003, we refer to the INS.

deported. 8 U.S.C. § 1254(a)(1)(1994), *repealed by* IIRIRA, Sept. 1996, Pub.L. 104-208, div. C, tit. III, § 308(b)(7), 110 Stat. 3009-615. Although Riley was eligible in 1992, his lawyer did not file a motion for relief under these provisions until January 1995, six months after the INS requested reinstatement of Riley's appeal. In addition, his counsel erroneously filed the motion with the INS, rather than the Board, and failed to file a motion to remand to the immigration judge for consideration of the new claim for relief. While Riley's application went unconsidered, the enactment of the IIRIRA on September 30, 1996, extinguished his claim for suspension of deportation. Nonetheless, Riley continued to believe his application for suspension of deportation was pending before the immigration judge. In 1996, he inquired about its status in a cover letter enclosed with his application for renewal of his work authorization. He wrote that he had not heard anything about his application for suspension of deportation and was not happy with his status, but his lawyer had told him "it's better this way: that it be left 'pending' as long as possible." (R. at 98.)

In November 1999, after Riley's arrest and imprisonment, his attorney sent him a bill for the preparation and filing of a Motion to Reopen and Remand, including discussions of the motion with the INS. However, the Motion to

Reopen and Remand is not in the record of the immigration proceedings.[3] While in prison, Riley communicated by letter with the immigration judge several times. On October 26, 1999, the immigration judge responded to Riley's first inquiry and informed him, "[s]ince the Board dismissed your case on the merits [in 1998], it has sole jurisdiction to consider any further action in the case, such as motions to reopen or remand." (R. at 209.) The judge also advised Riley that the record indicated he was still represented by an attorney.

On April 6, 2000, Riley wrote the immigration judge to complain about his attorney's failure to pursue the motion to suspend deportation and his failure to file the motion to reopen. On May 8, 2000, Riley again wrote to the immigration judge with a detailed list of complaints regarding his attorney's performance. His letter clearly demonstrates his understanding that his case could not proceed without a successful motion to reopen. On May 19, the immigration judge responded that he had no authority to "reopen or reconsider the decisions previously made by  in your case." (R. at 149.) Riley penned several more letters to the judge regarding his options and continued to complain about his attorney's representation. The judge responded:

> Finally, in your letter dated June 8, 2000, you stated that you believe
> you are eligible to be considered for suspension of deportation and that

---

[3] Riley claims his attorney told him the motion was never filed because "it wouldn't work." (R. at 207-08.)

the Immigration Court has jurisdiction to consider the application. I would note that you are currently under a final order of deportation. Jurisdiction of your case lies with the Board of Immigration Appeals. If the Board reopens your case and remands it to this court, you would be given a new hearing. If you file an application for suspension with the court, it would be rejected for lack of jurisdiction.

(R. at 197.)[4]

On August 8, 2000, Riley wrote to the INS's attorney to request the INS join him in a motion to the Board to reopen his case and attached a draft motion. On October 6, 2000, and again on November 21, 2000, the INS declined to join his motion. During this time, Riley also communicated with another attorney regarding his displeasure with his former attorney and, in June 2000, filed an informal complaint against his former attorney with the Utah State Bar. In September 2000, he received the forms for filing a formal complaint but did not actually file his formal complaint until February 2002. In addition, on September 8, 2000, Riley filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the District of Colorado. His petition for a writ of habeas corpus was denied on May 10, 2001, at which time Riley filed a *pro se* appeal with the Tenth Circuit. On August 23, 2001, we appointed counsel to assist Riley in his appeal.

On April 1, 2002, while Riley's appeal was pending, he filed a motion with

---

[4] The immigration judge repeatedly informed Riley that jurisdiction of his case remained with the Board and that he must file a motion to reopen and remand to initiate a hearing on his claim for relief.

the Board to reopen his case due to ineffective assistance of counsel. The Board

denied his motion on May 2, 2002, finding it untimely. Riley's appeal of the

Board's decision was consolidated with Riley's pending habeas appeal.

In *Riley v. INS*, we affirmed the district court's denial of Riley's petition

for writ of habeas corpus concluding his claims regarding his incarceration were

moot. 310 F.3d at 1257. However, we reversed the Board's denial of Riley's

motion to reopen, finding the Board failed to consider whether Riley

demonstrated the requisite due diligence to justify his tardiness in filing his

motion. We specifically instructed that on remand, "the [Board] must review

[Riley's] due diligence along with his attempts to comply with the [Board's]

requirements detailed in *Matter of Lazoda,* 19 I. & N. 637, 639 (BIA 1988)

(claims of ineffective assistance of counsel require a threefold showing: 1)

affidavit detailing agreement with counsel, 2) counsel informed of allegations and

given opportunity to respond, and 3) complaint filed with disciplinary

authorities)." *Id*. at 1258.

On remand, the Board again denied Riley's motion to reopen, concluding

Riley was not diligent in pursuing his claims and therefore failed to demonstrate

his entitlement to equitable tolling. In the alternative, the Board determined even

if Riley had established due diligence and compliance with the requirements of

*Lozada*, he had not shown the prejudice necessary to establish that his counsel

-7-

was ineffective and a reopening of his case was warranted. Riley appeals this decision.

## Standard of Review

A motion to reopen is considered a final, separately appealable order. *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004). "We review the [Board's] decision on a motion to reopen only for an abuse of discretion." *Id.* at 1362 (internal quotation and citation omitted). "The [Board] abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (internal quotation and citation omitted). Riley asserts the Board erred in concluding he had not demonstrated due diligence, was not prejudiced by his former counsel's performance and was not qualified for suspension of deportation. After careful review of the administrative record, we hold the Board correctly applied the law in its reasoned determination that Riley did not exercise due diligence in pursuing his claim. Consequently, Riley's motion to reopen was not timely filed and we need not reach his remaining claims.

## Due Diligence

"[A]n alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be

filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2)(1996). Riley's final order of deportation was entered on November 27, 1998, when the Board dismissed his appeal from the denial of his application for asylum and withholding of deportation. Although Riley learned of the decision in September 1999, he did not file his motion to reopen until April 2002, approximately two and a half years after he learned of the final order.

Equitable tolling applies in situations where, "despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001) (internal quotation and citation omitted). Although the doctrine is not limited to situations involving the wrongful conduct of a third party, the party seeking tolling must show that "ignorance of the limitations period was caused by circumstances beyond the party's control . . . and that these circumstances go beyond a garden variety claim of excusable neglect." *Id*. (internal quotation and citation omitted).

Here, the Board determined Riley failed to demonstrate an exercise of due diligence because:

> [T]he respondent took nearly a year from the time he knew of the Board's decision before inquiring with the [INS] about joining him in a motion. He took 18 months more to actually file his motion after the [INS] notified him that it would not join in his motion. During this

time he was aware of his problems with his attorney. However, he delayed also in attempting to show ineffective assistance of counsel. Though he did complain to the Utah State Bar about his attorney, he did not do so initially until June of 2000, and did not file a formal complaint with the bar until February of 2002.

(R. at 3.)

Riley complains that the Board's analysis fails to consider his numerous attempts to educate himself on the law and procedures required to reopen his case. He claims it was only after new counsel was appointed, August 31, 2001, that he learned the true extent of his former counsel's ineffectiveness. We disagree.

Accepting Riley's argument that he reasonably believed his former attorney was still effectively representing him through March of 2000, when Riley terminated his representation, and even were we to allow time for him to further acquaint himself with the procedural requirements of *Lozado*, the record clearly reveals that by September 2000, he had received direction from the immigration judge regarding the necessity of a motion to reopen, he knew his attorney had not filed a motion to reopen, and he received the means to file a formal complaint with the Utah State Bar.[5] In addition, by November 2000, the INS had twice unequivocally denied Riley's offer to file a joint motion to reopen his case. Given these facts, we are unpersuaded by Riley's assertion that he was "unable to obtain vital information regarding the nature of his claim and the ineffectiveness

---

[5] The October 2001 letter to Riley from the immigration judge merely repeated the same information that was supplied to him the year before.

of his prior counsel, until after August 31, 2001." (Appellant's Br. at 62.) In addition, even tolling the statute of limitations until August 31, 2000, Riley's motion to reopen on April 1, 2002, is untimely. His motion to reopen was filed seven months after his new counsel was appointed, a period well over the ninety-day statutory requirement.

Thus, we find no abuse of discretion in the Board's conclusion that Riley failed to show the requisite due diligence for equitable tolling. Rather, we agree that "the time and number limitations on motions to reopen are critical to bringing finality to immigration proceedings, and tolling those limits therefore should only be allowed in those cases where the alien clearly exercised due diligence once he became aware of the problem that resulted in the limitation not being met." (R. at 4) (citing *Iavorsky v. INS*, 232 F.3d 124 (2d Cir. 2000)); *see also Infanzon*, 386 F.3d at 1363) ("[I]t is petitioner's belated challenges, some made years after the events he testified to at the administrative proceedings, that underscore the need for adherence to the high standard necessary as a basis for assessing the substantial number of claims of ineffective assistance of counsel that come before the Board.") (internal quotation and citation omitted).

Accordingly, we **AFFIRM** the Board's decision.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

-11-