**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0087n.06
Filed: February 2, 2007

No. 06-3003

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GAZMEND AJAZI,

     Petitioner,

v.

ALBERTO GONZALES, Attorney General,

     Respondent.

                        /

ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS

BEFORE:    KEITH and CLAY, Circuit Judges; and MAYS, District Judge.[*]

**CLAY, Circuit Judge.**    Petitioner, Gazmend Ajazi, petitions this Court for review of a final order of the Board of Immigration Appeals finding Petitioner subject to removal under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, and denying his Motion to Reopen immigration proceedings. For the reasons that follow, we **AFFIRM** the Board of Immigration Appeals' decision and **DENY** the petition for relief.

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

**BACKGROUND**

Petitioner, a citizen of Albania, entered the United States on July 15, 1999, without inspection and without a visa. On October 14, 1999, Petitioner applied for asylum, asserting a well-founded fear of persecution on account of his political affiliations and activity. The Immigration and Naturalization Service (INS) initiated removal proceedings under § 240 of the Immigration and Nationality Act ("the Act") on November 23, 1999, when it issued a Notice to Appear. Petitioner appeared at an initial hearing on December 28, 1999, with his then-counsel, Patrick Salley ("Salley"). At that hearing, Petitioner conceded the factual allegations, as well as removability.

Petitioner subsequently appeared before the Immigration Judge, Robert D. Newberry, on April 5, 2000 for his merits hearing. The Immigration Judge called Petitioner an "inherently incredible witness" and found that Petitioner failed to meet his burden of proof. (J.A. at 120) Ultimately, he denied Petitioner's application for asylum, and requests for withholding of removal under § 241(b)(3) of the Act and under the United Nations Convention Against Torture.

Petitioner timely appealed to the Board of Immigration Appeals (BIA) on April 24, 2000. On appeal, Petitioner challenged the Immigration Judge's credibility determination, as well as his denial of Petitioner's application for asylum and requests for withholding of removal. The BIA dismissed Petitioner's appeal on November 1, 2002, summarily affirming the decision of the Immigration Judge. Petitioner alleges that Salley never notified him of this dismissal.

Petitioner avers that he "often called Mr. Salley to check on the status" of his case after Salley filed the appeal. (J.A. at 13) He declares that when he reached Salley, Salley "always would tell [him] that [his] case is still pending and [that Salley would] notify [him] upon receipt of the

decision." (*Id.*) He further states that "recently" when he could no longer reach Salley, he called Salley's brother, Noel Saleh ("Saleh"), and found out that Salley "had been suspended from the practice of law." (*Id.*) At that time,[1] Petitioner requested his file. Petitioner avers that Saleh mailed his file on July 1, 2005, and that he received it on July 7, 2005. Additionally, he claims that he immediately contacted current counsel to set up an appointment to review the file, and subsequently met with counsel on July 12, 2005.

During that meeting, Petitioner purportedly learned of the BIA's November 2002 dismissal. Petitioner then notified Salley of his intention to file a grievance against him with the Michigan State Bar in a letter dated July 12, 2005.[2] Although the record does not include a copy of Petitioner's grievance, it does reflect that the State of Michigan responded in a letter dated July 22, 2005. Therein, the State informed Petitioner that it had revoked Salley's license to practice law on June 18, 2005 and, accordingly, would not be investigating Petitioner's complaint.

Nearly three years after the BIA dismissed his appeal – on October 11, 2005 – Petitioner filed a Motion to Reopen immigration proceedings. Therein, Petitioner sought adjustment on the basis that counsel was ineffective, and that equitable tolling rendered his appeal timely filed. The BIA denied Petitioner's Motion to Reopen on December 8, 2005, in a *Per Curiam* Order finding that Petitioner failed to demonstrate that he acted with the requisite due diligence to invoke "equitable

---

[1]Petitioner does not indicate *what* time "that time" is. That is, he fails to indicate when he finally decided to call Saleh, or how long he had been out of contact with Salley. Additionally, Petitioner fails to indicate how frequently he contacted Salley, or how many times he actually spoke with him.

[2]The record does not reflect whether Salley responded in any way to Petitioner's letter.

tolling" of the period to file an appeal. Petitioner timely filed this appeal. On September 27, 2006, a panel of this Court denied Petitioner's Motion to Stay Removal.

## DISCUSSION

THE BOARD OF IMMIGRATION APPEALS DID NOT ABUSE ITS DISCRETION IN FINDING PETITIONER'S MOTION TO REOPEN WAS TIME-BARRED

### A.      Standard of Review

This Court reviews the BIA's denial of a motion to reopen for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992); *Scorteanu v. INS*, 339 F.3d 407, 411 (6th Cir. 2003). The Attorney General has "broad discretion" to either grant or deny motions to reopen. *INS v. Rios-Pineda*, 471 U.S. 444, 449 (1985). Reviewing under an abuse of discretion standard, "this Court must decide whether the denial of Petitioner's motion to reopen deportation proceedings was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination . . . ." *Pilica v. Ashcroft*, 388 F.3d 941, 948 (6th Cir. 2004) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982)) (alteration in original).

### B.      Petitioner's Untimely Motion to Reopen

Petitioner argues that the BIA abused its discretion "by misapplying the statute and the precedent case law set by this court" to deny Petitioner's Motion to Reopen. (Pet.'s Br. at 13) We do not agree. A motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2) (2005). Although several circuits have held that the deadline for filing a motion to

reopen immigration proceedings may be equitably tolled,[3] *see Iavorski v. INS*, 232 F.3d 124, 133 (2nd Cir. 2000); *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1181 (9th Cir. 2001) (en banc), this Court has never, in a controlling and published opinion, followed suit. *See Scorteanu*, 339 F.3d at 413 (declining to decide whether equitable tolling applies to § 242 of the Act); *Harchenko v. INS*, 379 F.3d 405, 409-10 (6th Cir. 2004) (acknowledging unpublished cases in this Circuit that apply equitable tolling, but finding petitioners failed to raise the issue). While this Court has applied an equitable tolling inquiry in unpublished opinions, it has not – even in those cases – found the BIA abused its discretion in dismissing untimely appeals. *See Miculi v. Ashcroft*, 96 F. App'x 338, 340 (6th Cir. 2004) (unpublished); *Ormanci v. Ashcroft*, 110 F. App'x 486, 487-88 (6th Cir. 2004) (unpublished); *Hermiz v. INS*, 86 F. App'x 44, 45 (6th Cir. 2003) (unpublished). Nevertheless, Petitioner argues, in his Motion to Reopen and in his brief on appeal, that equitable tolling applies to save the appeal.

We evaluate Petitioner's claim with reference to the general law of equitable tolling in this Court, as well as the persuasive law of sister circuits applying equitable tolling to Motions to Reopen immigration proceedings. When faced with the question of whether to apply equitable tolling to a generally time-barred claim, we consider five factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

---

[3]As this Court acknowledged in *Scorteanu*, the Circuits are split on whether § 242B(c)(3)(A) establishes a "mandatory and jurisdictional" time bar, or a statute of limitations subject to equitable tolling. 339 F.3d at 414 n.4.

*Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001) (considering petition for habeas relief under 28 U.S.C. § 2255); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) (concerning the timeliness of seeking administrative remedies in the employment discrimination context). In our unpublished cases, we have declined to equitably toll the time period for filing BIA appeals where the petitioner failed to "establish prejudice from former counsel's untimely appeal," *Miculi*, 96 F. App'x at 340, and where the petitioner failed to exercise diligence in pursuing his rights. *Hermiz*, 86 F. App'x at 45; *Ormanci*, 110 F. App'x at 488; *see also Scorteanu*, 339 F.3d at 413-14 (declining to decide whether equitable tolling applies because petitioner failed to exhibit diligence in waiting nearly a year after receiving actual notice of deportation order, irrespective of the three years elapsed between deportation and actual notice allegedly attributable to ineffective assistance).

Additionally, where sister circuits have applied equitable tolling in the context of BIA appeals, they have required petitioners to act with due diligence to protect their rights and interests. *Jobe v. INS*, 238 F.3d 96, 100 (1st Cir. 2001) (en banc) (applying a five-factor test similar to this Court's test in *Dunlap*); *Iavorski*, 232 F.3d at 134 ("[E]quitable tolling requires a party to pass with reasonable diligence *through the period it seeks to have tolled*.") (emphasis added); *Socop-Gonzalez*, 272 F.3d at 1193 (equitable tolling applies "where despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim") (alteration in original) (internal quotations omitted). Even where applicable, courts "sparingly" invoke equitable tolling, *Jobe*, 238 F.3d at 100 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)), and do so only where "the circumstances that cause a [party] to miss a filing deadline

are out of his hands." *Id.* (alteration in original). Thus, at a minimum, a petitioner seeking to resuscitate a time-barred immigration appeal must establish due diligence.

Petitioner argues the BIA misapplied the law "as to when the 'due diligence' is relevant," and frames the inquiry with reference to the time after the petitioner becomes aware of final removal action. (Pet.'s Br. at 17) This Court has focused its due diligence inquiry both on petitioner's conduct *before* learning the status of his appeal, *see Hermiz*, 86 F. App'x at 45 (finding petitioner did not act with due diligence when he failed to "make any inquiries regarding the status of his appeal for several years"), and *after* learning of the need for appeal. *Scorteanu*, 339 F.3d at 414 (delay after actual notice was not excused, and petitioner was not diligent, where he mistakenly believed he had to locate former counsel and obtain an affidavit from him to establish ineffective assistance in support of a motion to reopen); *Ormanci*, 110 F. App'x at 487-88 (petitioner not diligent in waiting a year after actual notice of deportation to retain new counsel to bring motion to reopen proceedings). Sister circuits have assessed petitioners' conduct before learning of the need to appeal. *See Socop-Gonzales*, 272 F.3d at 1194 (petitioner who took no action to appeal a removal order was nevertheless diligent as he had "no reason to believe that his deportation order had become effective"); *Iavorski*, 232 F.3d at 134 (considering whether the party "pass[ed] with reasonable diligence through the period it seeks to have tolled"); *id.* (finding petitioner failed to exhibit due diligence when he attempted to contact his attorney to check up on his appeal, could not contact the attorney, and eventually stopped trying to contact the attorney for a period of two years).

In light of the precedent of this and other circuits, the BIA did not abuse its discretion in denying Petitioner's Motion to Reopen as not timely filed, and in declining to equitably toll the filing

period. Petitioner does not dispute that he filed his Motion to Reopen nearly three years after the Immigration Judge's order of removal became final. Nor does Petitioner dispute that established policies of the BIA require that Motions to Reopen be filed within 90 days of the final removal order. Instead, Petitioner claims the BIA, in finding that he did not act with the requisite due diligence, misapplied the law regarding equitable tolling.

To establish that he acted with due diligence, Petitioner attached an affidavit to his Motion to Reopen wherein he averred that he "often called Mr. Salley to check on the status" of his appeal. (J.A. at 13) Petitioner further averred that "whenever [he] was able to get a hold of [Salley], he always would tell [him] that [the] case is still pending" and that when he received the BIA decision, he would notify Petitioner. (*Id.*) Additionally, in an affidavit supporting his Motion to Reopen, Petitioner sought to establish diligence by averring

> That recently [he] was not able to get in touch with Mr. Salley, so [he] contacted [Salley's] brother, Noel Saleh, who told [him] that Patrick had been suspended from the practice of law. That [he] requested that a copy of [his] file be mailed to [him]. That [Saleh] mailed it to [him] on July 1, 2005. That [he] received the file by mail on July 7, 2005. That upon receipt [he] contacted . . . [current counsel] for an appointment. That [he] met with [counsel] on July 12, 2005. That upon review of [his] file [counsel] notified [him] that [his] case was dismissed by the BIA on November 1, 2002.

(J.A. at 13) Petitioner ultimately filed the motion to reopen on October 11, 2005.

On the facts before it, the BIA did not abuse its discretion in declining to equitably toll the period. Petitioner's affidavit does not aver the dates and times that he contacted Salley, thereby leaving both the number and frequency of attempts to the imagination. In fact, it fails to set forth the date of Petitioner's last attempt to contact Salley, and the date of Petitioner's ultimate phone call

to Salley's brother, Saleh, to determine Salley's whereabouts.[4] Thus, the BIA could not know whether Petitioner more closely resembled the petitioner in *Iavorski* or in *Socop-Gonzalez*. If, as in *Iavorski*, Petitioner initially made several attempts to contact his attorney and then stopped trying for a period of years without a status update, then he too "should have known he had been the victim of ineffective assistance of counsel well before" he ultimately demanded his file. *See Iavorski*, 232 F.3d at 134. However, if, like the petitioner in *Socop-Gonzalez*, Petitioner had no reason to believe that his removal order had become effective and that his attorney deprived him of "vital information" notwithstanding frequent and repeated attempts over the period after removal became final, then perhaps Petitioner acted with diligence.[5] *See Socop-Gonzalez*, 272 F.3d at 1193. Having no information as to the frequency and number of attempts Petitioner made to contact counsel, however, we cannot say that the BIA abused its discretion.

Further, we note that Petitioner filed his Motion to Reopen exactly ninety days after July 12, 2005, the date he allegedly learned his appeal had been denied.[6] Petitioner received his file from Salley on July 7, 2005, and called to schedule an appointment with new counsel that same day.

---

[4]As Respondent notes in its brief on appeal, "[t]he vague nature of th[is] information . . . sharply contrasts with the detailed dates that Petitioner provided concerning his contacts with his present counsel." (Resp't's Br. at 21)

[5]We note that it defies belief that Petitioner could reasonably have believed that between April 24, 2000, the date he filed notice of appeal with the BIA, and July 7, 2005, the date he received his file from Salley, no action had been taken on his appeal.

[6]Under the Code, "the term day when computing the period of time for taking any action provided in this chapter including the taking of an appeal, shall include Saturdays, Sundays, and legal holidays, except that when the last day of the period so computed falls on a Saturday, Sunday or a legal holiday, the period shall run until the end of the next day which is not a Saturday, Sunday, nor a legal holiday." 8 C.F.R. § 1001.1(h).

Assuming that Petitioner could not ascertain that his appeal had been denied by merely reviewing the file on July 7, 2005, Petitioner sought new counsel either to help him understand what happened, or to initiate a motion to reopen to challenge his removal. That Petitioner nearly missed the ninety day filing period – even giving him the benefit of the doubt and measuring from July 12, 2005 – further supports a finding that the BIA did not abuse its discretion.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the Board of Immigration Appeals' decision and **DENY** the petition for relief.